# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

STONIE SHANE NORRIS,

      Petitioner,

v.                              Case No. 3:22-cv-273-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

I.   **Status**

Petitioner Stonie Shane Norris, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. <u>See</u> Doc. 1. He challenges a state court (Putnam County, Florida) judgment of conviction for two counts of attempted voluntary manslaughter, home invasion robbery, and grand theft auto. He is serving a forty-five-year term of incarceration. Respondents filed a Response. <u>See</u> Doc. 7 (Resp.)[1]. The Court provided Petitioner with an opportunity to reply (Docs. 4,

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

8), but he did not do so. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is

unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could

disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the

outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v.

Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   Background and Procedural History

The following summary is taken from Respondents' Response:

> Petitioner was charged with two counts of attempted first degree murder, one count of home invasion robbery, and one count of grand theft of a motor vehicle.

Resp. at 1-5. Before trial, the trial court appointed counsel, but Petitioner made several requests to represent himself, which the trial court granted after conducting numerous Faretta[3] and Nelson[4] inquires.

> On March 21, 2016, jury selection took place. The transcript reveals that the office of regional conflict counsel had apparently been appointed as standby counsel. The court inquired whether Petitioner wanted counsel. After having a chance to confer with standby counsel, Petitioner indicated he did not. The trial court also advised Petitioner as to the maximum sentences for his charges.

---

[3] Faretta v. California, 422 U.S. 806 (1975).

[4] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

Once the venire was brought in, and the State had finished inquiring, Petitioner began his inquiry. The following took place:

> PETITIONER: [T]he assumption is innocent, that I'm innocent right now. I'm still innocent. And I'm only found guilty if he proves it to y'all. So the defense has to prove that everything that they're saying is true . . . is anybody going to hold it against me if I do not testify?
>
> VENIREMAN: Yeah, I think I might. (Prospective jurors simultaneously speaking).
>
> MS. DALARIDIS [(Petitioner's standby counsel)]: If you could raise your hands and leave them up high. Anyone that will hold it against him if he doesn't testify, raise them up high.
>
> [PROSPECTIVE JURORS INDICATING].
>
> MS. DALARIDIS: Number 2, Mr. Hughes. Number 3, Ms. White.
>
> COURT: Ms. Dalaridis, he asks the questions, not you.

Petitioner called out five jurors who acknowledged they would hold it against Petitioner if he did not testify. The trial court interjected:

> COURT: What we really need to find out is if you-all can follow the instruction. The constitution requires the State to prove its

7

accusations against the defendant. It is not necessary for the defendant to disprove anything. Nor is the defendant required to prove his innocence. It is up to the State to prove the defendant's guilt by evidence. Can everyone follow that instruction?

JURORS: Yes.

COURT: Is there anybody who would not be able to follow that instructions? Okay. No response. Now, if the defendant chooses not to testify in this case, you cannot view that as any admission of guilt or be influenced in any way by his decision. No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in this case . . . . [W]ould everybody be able to follow that instruction?

JURORS: Yes.

The trial court then made specific inquiries of the jurors as to whether they could follow the instruction given by the court. When inquiring of one prospective juror, Ms. Kennedy, the following took place:

COURT: [H]ow about any of you all?

KENNEDY: I understand it. I understand it, yeah.

\* \* \*

COURT: And you can follow this Court's instruction?

8

KENNEDY: I think so.

COURT: Well, you think so or do you know so?

KENNEDY: I would try.

COURT: Okay.

KENNEDY: I'm being honest. I would try.

\* \* \*

COURT: Okay. And does that alleviate any concerns you thought you may have had –

MS. ABBOT: Yes.

COURT: - about whether or not he testifies or not?

KENNEDY: Yes.

Petitioner then requested to be represented by an attorney and the trial court granted such request appointing Ms. Dalaridis and Mr. Richardson from the office of regional conflict counsel. The trial court informed the attorneys that it would permit the defense [to] start voir dire over after lunch.

After lunch, defense counsel requested a continuance. Ms. Dalaridis stated that she had been given the case file a week prior and was familiar with the case, but because Mr. Richardson had been prepping for another one of his cases, "we are not as familiar with this particular case as we should be." The State argued that Mr. Richardson had been on the case almost from the beginning and had done most of the depositions of the witnesses. Additionally, the State argued that Petitioner "understood from all the <u>Nelson</u>

and <u>Faretta</u> inquiries and whatnot that, you know, standby counsel – if they jump in, they have to jump in [] in whatever posture the case is at the time [Petitioner] elects to have them represent [him]." The court denied the motion.

Defense counsel then moved to strike the jury panel arguing, "the jury panel stated that they would want to hear the defendant's story . . . they are biased. We would ask for a new jury panel." The trial court denied the motion. Defense counsel then continued its questioning of the prospective jurors:

> DEFENSE: So the question remains. . . if my client does not get up on the stand and testifies, will y'all hold that against him? Let's be honest here. There's nobody here that's going to hold that against him?
>
> JURORS: (indicating)
>
> DEFENSE: Yes, sir, you are? . . . Now, let's be honest. Let's raise our hands . . . and I'm going to go one by – if you could keep your hands raised, if you don't mind. I appreciate it.
>
> JURORS: (indicating).
>
> DEFENSE: What's your name, ma'am?
>
> MS. KENNEDY: Kennedy.
>
> DEFENSE: Kennedy?
>
> MS. KENNEDY: Yes.
>
> DEFENSE: Thank y'all very much. I appreciate it

After the defense's inquiry, when discussing cause challenges, defense counsel sought to strike "the individuals that stated that they would want to hear [Petitioner] testify." One of the jurors listed by defense counsel was juror number 37 (Ms. Kennedy). The trial court denied the challenge.

Then, after defense exercised its ten peremptory challenges, the defense requested more strikes and the trial court granted such request. Once the four additional peremptory challenges were used, the following took place:

> COURT: Next is Lawrence Edwards.
>
> DEFENSE: It's up to us?
>
> COURT: Somebody.
>
> STATE: Do you have any more strikes?
>
> DEFENSE: No. But we request another strike.
>
> COURT: Denied. . . . The State have any objection to Mr. Edwards?
>
> STATE: We would strike, Your Honor.
>
> COURT: All right . . . that brings us to Ms. Kennedy.
>
> STATE: She's acceptable for the State.
>
> COURT: Anything else? All right. Then our jury will be Francis;

Morris; Hurst; Screen; Barker; and
Kennedy.

When discussing alternates, defense counsel
asserted, "just for the record Your Honor, we object to
this panel based on our previous arguments when we
asked for cause strikes." The Court responded, "All
right. Thank you. Overruled."

Trial commenced on March 23, 2016. Prior to
trial and prior to the jury being sworn, defense counsel
moved for a continuance citing the short period of time
the lawyers had been on the case and argued, "my client
believes now that he doesn't have a choice whether or
not he testifies or not . . . that's the reason we're
objecting to the jury and also asking for a continuance."
The trial court noted that last time they spoke, defense
counsel had assured the court that defense counsel was
familiar with the case so as to be able to step in.
Defense counsel agreed, stating "in complete candor
with the court, Your Honor, I agree with that," but
explained that he had been dealing with another case
because he had been informed by Petitioner that he still
wanted to proceed pro se. The court noted this case had
been going on since 2013 and that they had gone back
and forth multiple times with Petitioner indicating that
he wanted an attorney and then stating he did not want
an attorney, noting that "it's been a series of delays
created by [Petitioner]." The trial court denied the
motions.

Immediately prior to the jury being sworn,
defense counsel stated, "I just renew our past prior
objections to this jury panel." The trial court stated,
"Overruled." The trial judge then gave the jury various
instructions, including a defendant's absolute right to
remain silent.

[During trial,] Teresa Fulford testified that on
the morning of the crime, she observed Petitioner
approaching her home from the yard. Petitioner

entered the home and struck Mrs. Fulford. Petitioner then dragged Mrs. Fulford to the bathroom, tied her up with plastic straps, and placed duct tape on her face and eyes. Petitioner then turned on the shower.

Mr. Fulford testified that when he returned home, he approached the bedroom where he believed Mrs. Fulford was located. Petitioner then jumped out of the closet at him and began to fight him. Petitioner struck Mr. Fulford multiple times and Mr. Fulford lost consciousness on the floor. Once he regained consciousness, Mr. Fulford realized that several items were missing. The items included a cell phone, a money clip with money, a 32 caliber handgun, his driver's license, and his concealed weapons permit. Mr. Fulford's 2012 Nissan Altima was also missing. Additionally, Mr. Fulford confirmed that about a week prior, several items went missing from his home, including the key to the Altima, the house phone, and bedding.

Detective Phillips testified that on November 22, 2013, he responded to the victim's home. The Deputy observed that Mr. Fulford had facial injuries, had blood on his face, and his eyes were bloody and almost swollen shut. The Deputy then observed Teresa Fulford who had a bloody face and her eyes were completely swollen shut. When he went into the bathroom, Deputy Phillips observed that the shower was running, there was blood on the floor, and there was a red industrial sized commercial pipe wrench.

Sergeant Frank testified that he collected a pipe wrench, zip ties, and duct tape from the victim's home. In addition to searching the victims' home, Sergeant Frank also searched the home next door. The home next door was vacant; however, there was some "sleeping material" found in the home. Sergeant Frank identified a sheet, comforter, and pillow found in the home next door.

13

Detective Sapp testified that while collecting evidence outside the crime scene, he noticed a camouflage backpack along the wall of the neighboring house. Inside the backpack, the detective found white zip ties, a checkbook belonging to Petitioner, and clothing items. The Fulford's Nissan Altima was found in Lake City. Detective Schwall testified that zip ties were found in the vehicle.

Melissa Justice, the victims' daughter, testified that Petitioner is her ex-boyfriend. Ms. Justice ended their relationship on September 29, 2013, and moved out of the house they shared. Afterwards, Petitioner called Ms. Justice numerous times. Ms. Justice identified State's Exhibit 27 as a voicemail that Petitioner left for her. The State published the exhibit:

> I think I know where you're at now. Okay, I got this one figured out. It's either I go (inaudible) and stay close to your mom and dad and then watch them go down [] for Christmas or Thanksgiving or I just wait for you to show up.

Ms. Justice testified that on the date of the crime, she called her father's cell phone, but her father did not answer the phone – Petitioner did. Petitioner told her that he had hurt her parents and that she needed to come check on them. Ms. Justice called the Putnam County Sheriff. At that time, Petitioner left her another voicemail, identified as State's exhibit 28, which was published for the jury:

> You can figure out one and one. I'm sitting here with your mom's cell phone in my hand, so try to figure out how I got that. Melissa, [] I told you this was fucking me up in the head. And I'm sorry. I did something to your parents. I'm sorry.

In the days after the crime, Petitioner called Ms. Justice again and informed her that he left her parents' Nissan Altima in Lake City.

After the State and Defense counsel rested their cases, the jury returned a verdict finding Petitioner guilty of two lesser-included counts of attempted voluntary manslaughter. The jury specifically found that Petitioner did not display, use, threaten to use, or attempt to use a weapon for both counts. The jury also found Petitioner guilty of grand theft of a motor vehicle and home invasion robbery, without displaying, using, threatening to use, or attempting to use a weapon. Appellant received a 45-year sentence.

Resp. at 1-13 (record citations omitted).

## IV. **The Petition**

### **Ground One**

Petitioner argues that the trial judge erred in denying Petitioner's motion to disqualify, because when denying the motion to disqualify, the trial judge failed to make a ruling on the sufficiency of the motion. Doc. 1 at 6.

Petitioner, with help from appellate counsel, raised this claim as his sole issue on direct appeal. Resp. Ex. E. In its answer brief, the state responded as follows:

A motion to disqualify a judge must be well-founded and contain facts germane to the judge's undue bias, prejudice or sympathy. Wright v. State, 857 So. 2d 861 (Fla. 2003). The subjective fear of a party seeking the disqualification of a judge is not sufficient. The fear of judicial bias must be objectively reasonable. Foy v. State, 818 So. 2d 704 (Fla. 5th DCA 2002).

Subjective fears of prejudice are not reasonable and well founded -- on the contrary, they are frivolous and designed to frustrate the process. Fischer v. Knuck, 497 So. 2d 240, 242 (Fla. 1986). "A motion to disqualify must be well-founded and contain facts which are germane to the judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So. 2d 103, 107 (Fla. 1992). The focus of a motion to disqualify is not on the reasonable subjective belief of the petitioner, rather, the standard for determining whether a motion is legally sufficient is "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So. 2d at 1087. "The movant's subjective fears are not sufficient." Jernigan v. State, 608 So. 2d 569, 570 (Fla. 1st DCA 1992). "The trial judge must determine whether, upon the facts alleged, a reasonably prudent person would fear that she would not get a fair and impartial trial. Id. See also Rogers v. State, 630 So. 2d 513, 515 (Fla. 1993) (inquiry focuses on reasonableness of defendant's belief that he will not receive fair hearing); Breakstone v. MacKenzie, 561 So. 2d 1164, 1167 (Fla. 3d DCA 1989) (legal sufficiency governed by reasonable person standard), approved in part and quashed in part on other grounds, 565 So. 2d 1332 (Fla. 1990). Thus, the test is an objective one, not a subjective one.

The law is well established that the asserted facts must be "reasonably sufficient" to create a "well-founded fear" in the mind of a party that he or she will not receive a fair trial. Fisher v. Knuck, 497 So. 2d at 242. See also State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613 (1939); State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 (1938). A verified motion for disqualification must contain an actual factual foundation for the alleged fear of prejudice. Wilson v. Renfroe, 91 So. 2d 857 (Fla. 1956); Wyman v. Reasbeck, 436 So. 2d 1112 (Fla. 4th DCA 1983). It is the burden of the party seeking disqualification to show that the part[y] has a well-grounded fear of not receiving a fair

trial. <u>Corie v. City of Riviera Beach</u>, 954 So. 2d 68 (Fla. 4th DCA 2007).

In the instant case, Appellant argues that the trial court reversibly erred in denying his Motion to Disqualify. Specifically, Appellant challenges the manner in which the trial court denied the Motion to Disqualify, as well as the denial itself. With respect to the manner of denial, Appellant avers that, by orally denying the Motion, the trial court, "never ruled on the legal sufficiency of the motion or entered an order on it," and, as a consequence, "[t]hese alone are fatal flaws and constitute[] reversible error." Although Appellant claims that the manner in which the trial court denied the Motion was "fatally flawed," he provides no authority for such a proposition. The State argues that there was no impropriety on the part of the trial court as to the manner in which the Motion was denied. There is no provision under Florida Rule of Judicial Administration 2.330, whereby the trial court is required to enter a written order, specifically determining that the Motion, if denied, was legally insufficient. To the contrary, the only requirement of anything being in writing pertains exclusively to the Motion seeking disqualification. Additionally, the denial of such a Motion is an implicit finding that the Motion was legally insufficient, considering the fact that legal sufficiency alone is to be determined by a trial court. Cases warranting reversal in such instances dealt with situations whereby a trial court took issue with the factual assertions alleged, and failed to address, exclusively, whether the Motion itself was legally sufficient. Here, the State avers, the trial court's denial of the Motion is an implicit finding that the Motion was legally insufficient, and was not an improper ruling.

Further, as to the lack of a written Order denying the Motion, the State notes that the record demonstrates the Motion to Disqualify was presented to the trial court on the morning of jury selection in

open court. After presenting the Motion, the trial court informed Appellant, as the court did throughout the entirety of this case when Appellant was representing himself pro se, that they were at a critical stage in the proceedings, that he had the right to be represented by an attorney, and that, similarly, he had the right to represent himself if he so chose. When Appellant was asked whether he wanted to have Regional Counsel step in and take over as his attorney, Appellant stated, "not at this point, not until that motion is done, sir." In other words, Appellant was demanding that the Motion be addressed at that point before he would make any further decisions regarding the progression of his trial. Appellant raised no objections to the lack of a written Order, or to the lack of any specific finding that the Motion was legally insufficient. As a consequence, the State asserts that such claims regarding the manner in which the denial of the Order was made by the trial court, are without merit, and similarly un-preserved given the failure to raise such claims in the lower court at the time the alleged errors occurred.

As to the underlying claim that the Motion to Disqualify should have been granted based on Appellant's alleged belief that he could not obtain a fair trial based on actions of the trial court, the State argues that the trial court acted properly in denying the Motion. Appellant failed to put forth a legally sufficient claim of objective, as opposed to subjective fear that he could not obtain a fair trial. In his Motion, Appellant averred that, on March 14, 2016, at a pretrial hearing, he was asked if he was ready for trial, to which he allegedly stated no. In response, according to Appellant, the trial court inquired as to why, to which Appellant stated that he had a petition for writ of habeas corpus pending in the Florida Supreme Court. When the trial court stated that it had no notice of any petition in the Florida Supreme Court, Appellant alleged that he asked to present a "notice" from the Florida Supreme Court to the trial court, but that before he could finish his sentence, the trial court

"requested for the deputy to please remove him [Appellant] from [the] courtroom."

The State argues that, even assuming arguendo the sequence of events occurred as alleged, they do not demonstrate a reasonable belief of bias or prejudice on the part of the trial court. Appellant was before the trial court on March 14th solely for the purposes of setting the date for trial to begin. Appellant was asked a straightforward and simple question related to whether he was prepared for trial. Appellant's reason for stating he was not ready pertained to a petition he filed in the Florida Supreme Court. Appellant attempted to argue that the trial court's failure to review a petition, over which the trial court had no jurisdiction, somehow rose to the level of demonstrable bias against Appellant. The State disagrees. The hearing was not for the purposes of allowing Appellant to present and argue a petition filed in the Florida Supreme Court; it was exclusively a pretrial status hearing to determine the date that trial would commence, not for reviewing a petition filed in another court. Therefore, having Appellant removed at the conclusion of the hearing for which he was before the court would seem, in the State's estimation, entirely appropriate.

While the record is devoid of what actually transpired at the hearing, other than the minutes of the hearing contained in the record on appeal that demonstrate Appellant expressed his readiness for trial and the date set for trial, the State notes that the transcript of when Appellant provided his Motion to Disqualify is contained in the record and complete[ly] refutes any notion of bias on the part of the trial court. Specifically, the State points to the fact that the same petition Appellant referenced in his Motion to Disqualify was discussed at the time the Motion was filed in court. As the record reflects, far from being dismissive, the trial court actually engaged Appellant in inquiring the nature of the petition and the claim

related thereto. Additionally, the trial court answered the questions asked by Appellant to the extent he was permitted to do so, and allowed Appellant to speak with standby counsel when requested. Instead of being biased against Appellant, the trial court ensured Appellant was given ample opportunity to address any concerns he had to the court, and actively inquired of Appellant if he chose to continue to represent himself or if he wanted to have counsel appointed. Appellant, however, refused to engage with the trial court, insisting that he received correspondence from the Florida Supreme Court saying that if he was represented, the Court could not review his petition for writ of habeas corpus. Appellant categorically refused to answer any questions asked by the trial court. Despite Appellant's disruptive and intentionally difficult behavior, the trial court went through a full <u>Faretta</u> inquiry with Appellant, who chose not to answer any of the questions asked related thereto. Such actions by the trial court fail to demonstrate bias on the part of the court, and completely refute any allegations to the contrary made by Appellant in his Motion.

As noted by the trial court, Appellant's case had been pending since 2013, at the time he filed his Motion to Disqualify. In that time, as reflected in the record, Appellant filed numerous pro se pleadings, was appointed counsel, then chose to represent himself, and then chose to be represented during trial. Despite Appellant's seemingly continuous attempts to delay the procession of the trial, the trial court never engaged in any behavior that would warrant disqualification in this case, certainly not during the events of March 14th as alleged in the Motion to Disqualify.

Although Appellant makes other cursory and conclusory assertions of alleged actions on the part of the trial court, Appellant failed to provide any specificity as to such occurrences, and similarly failed to allege the date upon which such instances occurred.

20

As a result, such allegations were legally insufficient to provide any basis for disqualification given their conclusory and speculative nature, as well as the inability to determine whether they occurred within the previous 10 days, as required by Rule 2.330(c). Further, to the extent Appellant challenges the oral Motion to Disqualify made through counsel during trial, the State asserts that the trial court correctly denied that Motion since it was legally insufficient. "The law is well-settled that a motion for disqualification must be made in writing, and a request that is only made orally is legally insufficient." Forrest v. State, 904 So. 2d 629, 629-30 (Fla. 4th DCA 2005) (finding the defendant's motion to disqualify was legally insufficient to require removal where the motion was made orally and defense counsel did not request a continuance in order to file a written motion). Accordingly, Appellant has failed to establish an entitlement to relief, and the instant claim should be denied.

Resp. Ex. F at 3-11 (record citations omitted). The Fifth District Court of Appeal found Petitioner's claim lacked merit and per curiam affirmed his judgment and convictions without a written opinion. Resp. Ex. G.

To the extent that Petitioner urges that the state court erred under Florida law when it found no error in the trial judge's denial of Petitioner's motion to disqualify, this assertion is not cognizable on federal habeas review. See Overton v. Jones, 155 F. Supp. 3d 1253, 1301 (S.D. Fla. 2016) (finding the petitioner's claim that the trial judge had to recuse himself under Florida law

is not a proper claim for federal habeas relief).[5] In any event, even if this claim were cognizable and properly before the Court, Petitioner cannot show that the trial judge's decision amounted to a due process violation. See Davis v. Jones, 506 F.3d 1325, 1332-33 (11th Cir. 2007) (explaining that habeas review of state court adjudication of a motion to disqualify trial judge narrowly concerns whether the state court's decision amounted to a due process violation). Thus, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One is denied.

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

**Ground Two**[6]

Petitioner alleges his Sixth Amendment rights were violated when the state committed a <u>Giglio</u>[7] violation by relying on evidence and photos of damage (i.e., a dented doorjamb) that occurred during a prior, unrelated incident to prove the element of a forced entry for the underlying charge. Doc. 1 at 7.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> On Ground One, the Defendant claims that Trial Counsel was ineffective for failing to object to the State's questioning of witness Teresa Fulford, which also concerned a <u>Giglio</u> violation.
>
> Here, the State argues that the Defendant's claim is conclusory. The State claims that the Defendant's argument is inconsistent and runs afoul of the Motion in Limine Trial Counsel filed and argued. Specifically, Trial Counsel filed a Motion in Limine to keep out any references to a prior burglary at Mr. and Mrs. Fulford's residence, which is the same residence involved in the Defendant's present convictions. Now Defendant is arguing that Trial Counsel should have elicited testimony regarding this prior, uncharged

---

[6] Respondents contend that Petitioner never presented to the state court the claims in Grounds Two, Three, Four, Five, Seven, and Ten of the Petition, and thus those Grounds are unexhausted and procedurally barred. Resp. Ex. 19. However, in his Petition, Petitioner contends he presented these claims to the state court during his Florida Rule of Criminal Procedure 3.850 proceedings, and a review of his Rule 3.850 motion shows he raised strikingly similar claims. Thus, the Court construes the claims raised in Grounds Two, Three, Four, Five, Seven, and Ten of the Petition as the same claims Petitioner raised in his Rule 3.850 proceedings and considers such claims to be exhausted. Any claims not previously raised in state court that Petitioner now attempts to present in this Court would be unexhausted and procedurally barred.

[7] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

burglary. This is essentially Defendant trying to deploy hindsight analysis. "The standard is not how present Counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability." <u>Cheny v. State</u>, 659 So. 2d 1069, 1073 (Fla. 1995).

For the Defendant to establish a <u>Giglio</u> violation he must show that "l) the testimony given was false; 2) the prosecutor knew the testimony was false; and 3) the Statement was material[.]" <u>Guzman v. State</u>, 941 So. 2d 1045, 1050 (Fla. 2006). Mrs. Fulford was asked "was the doorjamb messed up before the struggle with Mr. Norris over it?" Mrs. Fulford answered "No". Further Mrs. Fulford testified that she had to struggle with the Defendant to keep the door closed which could conceivably damage the doorjamb. The Defendant is unable to satisfy prong one that the testimony was false, and is unable to satisfy prong two that the prosecutor knew it was false. Most importantly, even if Defendant could satisfy prongs one and two, which he has not, he certainly cannot satisfy prong three that the statement was material when considering the totality of evidence presented at the trial convicting him of the charges. Under the circumstances, Trial Counsel's strategy here was not unreasonable.

Lastly, the Defendant cannot show a reasonable probability of a different result. He cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 2-3 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Two is denied.

### Ground Three

Petitioner contends his Sixth Amendment rights were violated when the state presented unchallenged false testimony from Teresa Fulford who testified that during the incident, Petitioner tied her up using zip ties. Doc. 1 at 8. According to Petitioner, zip ties must be cut before removal, but during trial, the state only showed uncut zip ties that had never been used. Id.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> On Ground Three, the Defendant claims that Trial Counsel was ineffective for failing to impeach witness Teresa Fulford.

The Defendant claims that Trial Counsel was ineffective by failing to impeach Mrs. Fulford about the material to tie her up being rope and not zip ties, lack of photos of zip ties, lack of zip ties being introduced into evidence, and lack of marks on Mrs. Fulford's ankles.

The State in the response argues that the Defendant [is] trying to deploy hindsight analysis. "The standard is not how present Counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Cherry v. State, 659 So. 2d 1069, 1073 (Fla. 1995).

Mrs. Fulford testified that there were plastic ties on the bathroom floor. Mrs. Fulford further testified that those plastic ties are a fair and accurate depiction of what the Defendant put on her feet. A photo of these zip ties was introduced as State's Exhibit 6. Further, the State even introduced actual zip ties and duct tape as evidence during the State's case as Exhibit 22.

Although Mrs. Fulford was not specifically impeached about the zip ties, Mrs. Fulford was impeached several times by Trial Counsel on a variety of things. Regardless, the area of impeachment Defendant contends was ineffective is insignificant in considering the totality of evidence proving the Defendant's guilt. He cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of Strickland has been met here.

Resp. Ex. I at 4-5 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three is denied.

### Ground Four

Petitioner seems to allege that his Sixth Amendment rights were violated when defense witnesses were not presented at trial to testify about statements Teresa Fulford made to her treating physicians about a woman being responsible for the assault on her, rather than a male like Petitioner. Doc. 1 at 10.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> The Defendant claims that Trial Counsel was
> ineffective for failing to put up a defense, by not calling

27

a witness, and failing to object to witness Teresa Fulford's statement that Defendant caused her injuries.

The Defendant claims that Trial Counsel was ineffective for not calling Manik Becli, DDS, MD and Cory Hartman, MD to negate and impeach Mrs. Fulford's testimony regarding her injuries.

To assert a facially sufficient claim of ineffective assistance of counsel for failure to call a witness, the Defendant must 1) identify the prospective witness, 2) describe the substance of the witness's testimony, 3) state that the witness was available to testify, and 4) describe the prejudice resulting from omitting the witness's testimony." Petz v. State, 917 So. 2d 381 (Fla. 2nd DCA 2005) (citing to Nelson v. State, 875 So. 2d 579 (Fla. 2004)). The Defendant fails to satisfy prongs three and four in that Defendant failed to state that the witness was available to testify, and failed to describe the prejudice resulting from omitting the witnesses' testimony.

Assuming but not conceding Defendant's claim is sufficiently plead, based on a review of the record, there does not appear to be any statement by Mrs. Fulford "that the Defendant Stonie Norris caused her injuries during her treatment at Shands at the University of Florida." Instead, Trial Counsel filed a second Motion in Limine in an effort to keep out medical testimony. The Court, in deferring its ruling, in part did state that a proper foundation would need to be laid before opinion testimony could be elicited. The Court ultimately stated it would permit testimony of the victim Mrs. Fulford to include injuries that happened to her. This is proper as Mrs. Fulford never testified as to her opinion regarding the injuries or how they happened. Instead, Mrs. Fulford testified as to what was injured on her person and who caused those injuries which was all conduct she experienced and perceived and is arguably the best witness to testify

about the same. Testimony from Mr. and Mrs. Fulford corroborated Mrs. Fulford's injuries and that Defendant was the one who was responsible for causing them.

Although Defendant evidently wishes that Trial Counsel would have objected to Mrs. Fulford's testimony, as an officer of the Court, Trial Counsel cannot object in bad faith or without a legal basis. Here Trial Counsel did not have a valid basis and was thus, under the circumstances, not deficient in not objecting. Furthermore, Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of Strickland has been met here.

Resp. Ex. T at 5-6 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Four is denied.

**Ground Five**

Petitioner contends his Sixth Amendment rights were violated when the state attorney was permitted to misrepresent evidence of an unrelated voicemail from Petitioner to argue that Petitioner stole the victim's cell phone during the incident. Doc. 1 at 11-12.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to put up a defense and by failing to object to a misrepresentation of evidence related to Mr. Fulford's stolen cellphone and statements made by Defendant. More specifically, Defendant claims Trial Counsel did not object to arguments and comments made by the prosecutor during closing arguments.

> In order to prevail on [an] ineffective assistance of counsel claim for failing to object to comments made during closing arguments, it must be shown that the comments were objectionable and there was no tactical reason not to object. Walls v. State, 926 So. 2d 1156, 1166 (Fla 2006) (citing Wickham v. State, 124 So. 3d 841, 860 (Fla. 2013) and Stephens v. State, 975 So. 2d 405,420 (Fla. 2007). Defendant must also show that the Prosecutor's comments in closing argument were so prejudicial that they deprived him of a fair trial. Id. (citing Stephens, 915 So. 2d at 420). Here, the Defendant cannot prevail because the prosecutor's comments were not legally objectionable. The State of Florida, who bears the burden of proving Defendant's guilt, is lawfully permitted to argue in its closing

argument Defendant's guilt as proven by the evidence and inferences therefrom. "The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." <u>Frazier v. State</u>, 970 So. 2d 929, 930 (Fla. 4th DCA 2008) (citation omitted). The Prosecutor made arguments based on the evidence admitted at trial and made inferences to connect the various pieces of evidence admitted at trial . . . and why they added up to the Defendant's guilt.

     Even if Trial Counsel's failure to object to the Prosecutor's closing argument comments regarding Mr. Fulford's cell phone and Defendant's statements constituted ineffective assistance, any prejudice suffered by Defendant was slight, and did not rise to the level required under <u>Strickland</u> to merit relief. Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 6-7 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

     To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, <u>see</u> <u>supra</u> n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court

31

adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is denied.

**Ground Six**

Petitioner contends his Sixth Amendment rights were violated when Melissa Justice was permitted to testify that she was on the phone with her father at the time of the incident and overheard what took place, which contradicted her deposition testimony and prior statements to officers. Doc. 1 at 13.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to object to a misrepresentation of Melissa Justice's testimony.
>
> Melissa Justice testified that she tried to call her parents via the land line. Melissa Justice was not able to reach her parents via the land line the first time, so she called again. Melissa Justice called a land line a third time when her father picked up. Melissa Justice briefly spoke with her father before she hears both a woman's high pitched voice and a man's voice, and heard a dog bark. Melissa Justice further testified that when she called her dad's (Mr. Fulford's) cell phone, that the Defendant answered it.

Further, Detective Doug Schwall recovered Mr. Fulford's cell phone from a vehicle in Bay County, Florida which, was suspected to be connected to the Defendant. That same cell phone was identified during trial by Mr. Fulford. He said it was in his pocket before the Defendant knocked him out and was no longer in his pocket once he regained consciousness. Although, Melissa Justice was not an eye witness to the bludgeoning by the Defendant, her testimony concerning the gender of voices on the phone and the Defendant's admissions are beyond relevant and corroborate Defendant's guilt.

Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 7-8 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, <u>see</u> <u>supra</u> n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. As such, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established

federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Six is denied.

**Ground Seven**

Petitioner asserts his Sixth Amendment rights were violated when the state presented unchallenged evidence that Petitioner took a laptop from the victim's home, even though other evidence showed that no jewelry was taken from the home and the victim's vehicle was not in Petitioner's possession when officials found it in Lake City, Florida. Doc. 1 at 15.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to present or raise a defense against the testimony that Larry Fulford's laptop was taken from his home on the day of the incident. More specifically, Defendant claims that Trial Counsel was ineffective by failing to raise a defense or otherwise attack the testimony that Mr. Fulford's laptop was taken by Defendant on the day of the crimes.
>
> However, Trial Counsel did argue in closing argument about the laptop. There is no dispute that the laptop was recovered in the car which was recovered out of county. Trial counsel argued about the lack of evidence connecting the Defendant to the car. The evidence did show that car did belong to the Fulford's and that it was linked to the Defendant.

The Defendant appears to be trying to deploy a hindsight analysis yet again. "The standard is not how present Counsel would have proceeded, in hindsight, but rather there was both a deficient performance and a reasonable probability of a different result.["] Cherry v. State, 659 So. 2d 1069, 1073 (Fla. 1995).

Regardless, Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of Strickland has been met here.

Resp. Ex. T at 8-9 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings. Ground Seven is denied.

**Ground Eight**

Petitioner argues that his Sixth Amendment rights were violated when the defense never presented evidence of Petitioner's mental state at the time of the crime or presented a defense of voluntary intoxication based on PTSD, hypertension, recurrent schizophrenia, anxiety, and major depressive disorder; nor did counsel present evidence that Melissa Justice tried to have Petitioner Baker Acted before the incident. Doc. 1 at 16.

Petitioner raised a version of this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to raise a defense of the mental state of the Defendant at the time of the crime.
>
> In the Response, the State argues that the Defendant wrongfully claims that Trial Counsel was ineffective by failing to raise his mental state at the time of the crime during trial and also by failing to raise a defense of voluntary intoxication. Defendant's claim is wholly improper to support relief as an ineffective assistance of counsel [claim]. The law in Florida is well settled that "diminished capacity" or any mental health defense short of insanity are not valid defenses in Florida. The Florida Supreme Court along with multiple appellate courts in Florida have addressed this issue.
>
> In <u>Chestnut v. State</u>, 538 So. 2d 820 (Fla. 1989), the Florida Supreme Court decided a near identical

issue. In <u>Chestnut</u>, the Court determined that evidence of abnormal mental conditions not constituting legal insanity is inadmissible for the purpose of proving either the accused could not or did not entertain the specific intent or state of mind essential to the proof of the offense. <u>Id.</u> The Florida Supreme Court cited multiple cases in <u>Chestnut</u> standing for this proposition. <u>Id.</u> In <u>Ezell v. State</u>, 88 So. 2d 280 (Fla. 1956), that Court stated that "Since the plea of insanity was out and there was no defense based on mental defects less than insanity, there was no reason for . . . testimony or to labor the question." Any alleged mental defects of the Defendant to negate the intent element of the crimes charge[d] was specifically precluded and rejected as [a] legal defense in <u>Chestnut</u>. <u>Chestnut</u>[, 538 So. 2d] at 820.

The Florida Supreme Court has consistently held that the legal insanity defense is the only form of mental defense available at trial. <u>See</u> <u>Everett v. State</u>, 97 So. 2d 241 (Fla. 1957). In <u>Spencer v. State</u>, 842 So. 2d 52 (Fla. 2003), the Court stated that "while not specifically addressed by the lower Court, we conclude that the evidence of Spencer's "dissociative state" would not have been admissible during the guilt phase of trial. "Evidence of most mental conditions is simply too misleading to be allowed in the guilt phase." <u>See</u> <u>Dillbeck v. State</u>, 643 So. 2d 1027 (Fla. 1994); <u>Nelson v. State</u>, 43 So. 3d 20 (Fla. 2010); <u>Rigterink v. State</u>, 193 So. 3d 846, 863 (Fla. 2016); <u>see also</u>, <u>Gutierrez v. State</u>, 860 So. 2d 1043, 1044 (Fla. 5th DCA 2003) (holding that attorney's failure to investigate Defendant's history of mental health problems, without a claim that he was insane at the time he committed the crime in question, did not constitute ineffective assistance of counsel).

To the extent that Defendant is arguing that Trial Counsel was ineffective for failing to argue that he was voluntarily intoxicated, that to[o] would be an improper argument. "Voluntary intoxication resulting from the consumption, injection, or other use of alcohol

> or other controlled substance as described in Chapter
> 893 is not a defense to any offense proscribed by law."
> Florida Statute 775.051 (2020). Thus, Trial Counsel
> cannot be held to be ineffective for not making improper
> arguments.

Resp. Ex. T at 9-10 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Eight is denied.

**Ground Nine**

Petitioner asserts his trial counsel, Derrick Smith, was ineffective for failing to obtain evidence that Petitioner had been invited into the home; notably, evidence that Petitioner's drinking glass and cigarettes were sitting on the table. Doc. 1 at 18. He also alleges trial counsel failed to obtain "Sun Pass" records showing Petitioner's location before November 22, 2013, the day of the incident. Id. And he failed to obtain Melissa Justice's phone records and text

messages showing that "this was a prearranged meeting with a certain time to show up," which would prove Petitioner and Melissa Justice were present and in contact in Fort Lauderdale hours before the incident. Id.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to raise the defense that the defendant had been invited into the home.
>
> On this ground, Defendant complains of alleged conduct by Derri[c]k Smith of the Public Defender's Office in failing to present a defense that the Defendant was invited into the home. However, Derr[]i[c]k Smith was not Trial Counsel. Further, Melissa Justice testified that she knew the Defendant, that he was her ex-boyfriend, that it was her decision to end the relationship and the Defendant was not in agreement with the breakup. Mrs. T[]eresa Fulford testified that Melissa Justice had already broken up with the Defendant and was living in Sarasota County, Florida at the time of the crimes. Further, based on the testimony o[f] Mr. and Mrs. Fulford, it is unequivocal that the Defendant was not invited into the residence to bludgeon, rob, and steal.
>
> Defendant also claims that Trial Counsel was ineffective for not admitting an[] alleged transponder in his vehicle. Defendant has not put forth any evidence that his vehicle even had a transponder. Defendant's argument that he had previously lawfully been at the residence does not constitute a perpetual invitation to come to the residence, commit a robbery, and attempted manslaughter, among other crimes. The Defendant appears to be trying to deploy a hindsight analysis yet again. "The standard is not how present Counsel would have proceeded, in hindsight, but rather

there was both a deficient performance and a reasonable probability of a different result." <u>Cherry v. State</u>, 659 So. 2d 1069, 1073 (Fla. 1995). The Defendant is trying to articulate a deficiency at any cost given the verdict and his sentence.

Regardless, Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 10-11 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Nine is denied.

**Ground Ten**

Petitioner contends his Sixth Amendment rights were violated when the state improperly elicited misleading testimony from Teresa Fulford about Petitioner hitting her during the incident. Doc. 1 at 20.

Petitioner raised a version of this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to object to the State's line of questioning of Teresa Fulford. More specifically, Defendant claims that Trial Counsel was ineffective regarding some of the testimony that was elicited from Mrs. Fulford by the Prosecutor.
>
> In the Response, the State argues that the Defendant merely makes a conclusory allegation which states that the Trial Judge overruled misleading testimony from Mrs. Fulford. Mrs. Fulford first answered "No" when asked what Defendant hit her with. The Prosecutor then asked if it was a fist or an object in which Mrs. Fulford responded that "it felt like an object, because it was hard, a hard hit." Trial Counsel did object on the basis of asked and answered but the objection was overruled.
>
> To the extent that the Defendant is challenging the Trial Judge's ruling on the objection, this is a claim that should or could have been raised on direct appeal.
>
> A review of the record shows that Trial Counsel effectively cross-examined and impeached Mrs. Fulford with her deposition transcript, that she didn't know what she was hit with. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 11-12 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

To the extent Petitioner is now raising the same claim as that raised in his Rule 3.850 motion, see supra n.6, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Ten is denied.

### Ground Eleven

Petitioner argues that his trial counsel was ineffective for failing to request a jury instruction that included the penalties for the offenses for which he was charged. Doc. 1 at 21.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> Here, it is well established that "Except in capital cases, the Judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial." Fla. R. Crim. P. 3.390; see also State v. Davis, 147 So. 3d 7, 8 (Fla. 1st DCA 2013). The Defendant's case was not a capital case and therefore the Court could not, even had Trial Counsel requested, instructed the jury on the penalty.

Resp. Ex. T at 12. The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Eleven is denied.

**Ground Twelve**

Petitioner contends that trial counsel was ineffective in refusing to file a pretrial habeas corpus petition after the trial court denied Petitioner's motion to reduce bond and then revoked his bond based on unsupported evidence. Doc. 1 at 23.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial counsel was ineffective for failing to file a Petition for Habeas Corpus. More specifically, Defendant claims that Trial Counsel was ineffective for not filing a Habeas Corpus Petition after the Court denied the Motion to Reduce bond and instead granted an Oral motion to Revoke Bond.

> The Defendant is trying to re-litigate an issue
> that is procedurally barred. The Defendant should have
> raised any challenge to an objection on appeal. A
> Motion was filed to revoke bond and the Court denied
> it. Trial Counsel cannot be held to be ineffective for not
> filing a Habeas Corpus. Regardless, the ground has no
> bearing on the outcome of the trial whatsoever. Neither
> prong of Strickland has been met here.

Resp. Ex. T at 12-13. The Fifth DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential

standard for federal court review of state court adjudications. Upon review of

the record, this Court concludes that the state court's adjudication of this claim

was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings. Ground Twelve is denied.

## Ground Thirteen

Petitioner argues that his trial counsel was ineffective for not presenting

evidence of the layout of the crime scene and photos of the actual incident. Doc.

1 at 24. According to Petitioner, this evidence would have rebutted the victims'

version of events and would have proved that the incident could not have

happened in the manner that the state witnesses testified to. Id.

Petitioner raised a version of this claim in his Rule 3.850 motion. Resp.

Ex. R. The trial court summarily denied the claim as follows:

> [T]he Defendant claims that Trial Counsel was ineffective for failing to cross-examine or impeach witnesses on the layout of the house.

> However, eleven photographs of the Fulfords['] home were admitted into evidence by the State during the trial. There were actual photos of the home, which was the crime scene. They weren't misrepresentations as the Defendant states. Defendant attached to his Motion a drawing, completed by him, allegedly of the Fulford's house. This drawing was completed well after the trial. The Defendant is attempting to point out areas where Trial Counsel should have cross examined the witnesses on certain issues or more strenuously examined the witnesses on certain issues. These instances do not satisfy the requirement of deficient performance nor the requirement of prejudice.

> This too is an attempt by the Defendant [to engage in] hindsight analysis. "The standard is not how present Counsel would have proceeded, in hindsight, but rather there was both a deficient performance and a reasonable probability of a different result.["] Cherry v. State, 659 So. 2d 1069, 1073 (Fla. 1995); see also Brown v. State, 846 So. 2d 1114, 1121 (Fla. 2003) (holding that the argument that Counsel should have cross-examined or more strenuously examined a witness on certain issues is a hindsight analysis which fails to show a deficient performance and a reasonable possibility of a different result.)[.]

> The Defendant cannot show a reasonable probability of a different result in that he cannot show that this would have impacted the outcome of the trial given the totality of evidence proving the Defendant's guilt especially considering, but not limited to, the testimony of both Mrs. and Mr. Fulford, the testimony

> of Melissa Justice, the victim's property that was found with the Defendant, the property belonging to the Defendant found near the residence where the crime occurred, the voicemail left by the Defendant, and the Defendant answering Mr. Fulford's phone saying he did something to Mr. and Mrs. Fulford. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 13 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Thirteen is denied.

**Ground Fourteen**

Petitioner contends that his trial counsel was ineffective for failing to challenge Juror Kennedy for cause, failing to use a peremptory strike to strike her from the jury pool, and failing to preserve this issue for direct appeal, which resulted in a biased juror sitting on the final panel and violating Petitioner's right to a fair and impartial trial. Doc. 1 at 26.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim:

46

[T]he Defendant claims that Trial Counsel was ineffective for failing to challenge a prospective juror for cause and by failing to preserve the same for appeal.

The Defendant appears to make a conclusory allegation which states that prospective juror Kennedy was allegedly biased. It appears that the Defendant is trying to re-litigate an issue in a roundabout way that is procedurally barred. However, assuming, but not conceding that the Defendant's claim is sufficiently pled, Defendant began jury selection by representing himself. It wasn't until the State had finished its portion of the jury selection, and the Defendant began his portion, that he requested Standby Counsel take over. Standby Counsel took over and argued for a mistrial based on Defendant's self-representation which, in Trial Counsel's words tainted and biased the panel and the Court denied the Motion.

Trial Counsel then moved to strike the jury panel arguing, "the jury panel stated that they would want to hear the Defendant's story . . . they are biased. We would ask for a new jury panel." The Trial Court denied the Motion. Trial Counsel then continued its questioning of the prospective jurors:

> Trial Counsel: So the question remains . . . if my client does not get up on the stand and testifies, will y'all hold that against him? Let's be honest here. There's nobody here that's going to hold that against him?
>
> Prospective Jurors: (indicating)
>
> Trial Counsel: Yes sir, you are? . . . Now let's be honest. Let's raise our hands . . . and I'm going to go one by – if you could keep your hands raised, if you don't mind. I appreciate it.
>
> Prospective Jurors: (indicating)

> Trial Counsel: What's your name ma'am?
>
> Ms. Kennedy: Kennedy.
>
> Trial Counsel: Kennedy?
>
> Ms. Kennedy: Yes.
>
> Trial Counsel: Thank y'all very much. I appreciate it.

After defense's inquiry, when discussing cause challenges, Trial Counsel sought to strike "the individuals that stated they would want to hear Mr. Stonie Norris testify." When it came time to select the jurors, Trial Counsel explicitly moved to challenge juror Kennedy, also known as Number 37 and the Trial Court denied the challenge.

Defendant is entitled to ten peremptory strikes, and the Court in using its discretion gave Defendant four additional strikes for a total of 14. Trial Counsel exhausted all 14 peremptory strikes and was denied a 15th peremptory strike prior to Juror Kennedy being seated.

When discussing alternates, Trial Counsel asserted, "just for the record Your Honor, we object to this panel based on our previous arguments when we asked for cause strikes.["] The Trial Court responded, "Alright. Thank you. Overruled." Immediately after the Jury was sworn, Trial Counsel stated, "I just renew our past prior objections to this jury panel["] and the Court stated "overruled." The Trial Judge then instructed the jury on various preliminary instructions, including a [d]efendant's absolute right to remain silent.

Trial Counsel cannot be held to be ineffective in that he moved to strike the whole panel[,] moved to strike juror Kennedy for cause, and used all

peremptory challenges and requesting five additional, four of which were granted, before getting to juror Kennedy, and for renewing all objections at the beginning of trial. Neither prong of <u>Strickland</u> has been met here.

Resp. Ex. T at 13-15 (record citation omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Although a juror may make initial statements during voir dire suggesting potential bias, later responses may establish that the juror can be impartial, especially when combined with appropriate court instructions to the venire. <u>See</u> <u>Bell v. United States</u>, 351 F. App'x 357, 359 (11th Cir. 2009) (per curiam) (citations omitted)[8]; <u>United States v. Simmons</u>, 961 F.2d 183, 186 (11th Cir. 1992). Also, "'[w]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.' To meet the actual bias standard, 'the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

on the face of the record.'" Fennell v. Sec'y, Fla. Dep't Corr., 582 F. App'x 828, 832 (11th Cir. 2014) (per curiam) (alterations and internal citations omitted) (quoting Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007)).

Here, evidence of Juror Kennedy's alleged bias was not plain on the face of the record. While Petitioner was still proceeding pro se, he asked the jury panel if they would "hold it against [him] if [he] did not testify." Resp. Ex. LL at 106. When several jurors began "simultaneously speaking," Petitioner, standby counsel, and the state approached sidebar and the trial court agreed to clarify Petitioner's question to the jury and inquired about any concerns. Id. at 108-09. The trial court then read the standard instruction on a defendant's right to not testify and asked each juror if they could follow that law. Id. at 111. During its inquiry, Juror Kennedy advised the trial court that she understood that right and she would try to follow that instruction. Id. at 119.

Petitioner then requested a sidebar, waived his right to self-representation, and asked that standby counsel be appointed. Id. at 120. Trial court appointed standby counsel who immediately moved for a mistrial, arguing that Petitioner's questioning about whether he would testify tainted the entire panel. Id. at 126. The state argued that the trial court's instruction and inquiry rehabilitated any concerning juror, and the trial court then denied trial counsel's motion. Id. at 127-28. Trial counsel was then allowed to re-conduct voir dire and again asked if Petitioner declined to testify, would any prospective

juror "hold that against him." Id. at 135. According to the transcript, Kennedy raised her hand. Id. at 136. Trial counsel then explained that Petitioner does not have to testify because at this point, he has nothing to prove, ultimately getting a verbal agreement from the entire jury panel that the state had the burden of proof and if it heard no testimony or evidence at all, it would have to find Petitioner not guilty. Id. at 139. Thereafter, trial counsel moved to strike for cause all jurors who indicated they would want to hear Petitioner testify at trial, including Juror Kennedy. Id. at 154-55. The trial court then denied counsel's request, explaining, "the way the question was posed was actually a[n] incorrect statement of the law, and that's why I went back and asked the jurors if they could follow the law, and they all indicated that they could." Id. at 155.

Although Juror Kennedy's initial statements were vague regarding whether she would hold it against Petitioner if he did not testify, the trial court's further questioning of the panel clarified that Juror Kennedy would follow the law as instructed. Besides Petitioner's conclusory allegations, nothing in the record suggests that Juror Kennedy was in fact biased. To that end, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Fourteen is denied.

**Ground Fifteen**

Petitioner contends that his trial counsel was ineffective for going to trial admittedly unprepared as counsel had only been appointed to the case for a short period of time. Doc. 1 at 27-28.

Petitioner raised a similar claim in his Rule 3.850 motion. Resp. Ex. R. The trial court summarily denied the claim as follows:

> Generally, Defendant has asserted through his Motion that Trial Counsel was ineffective by proceeding with Trial.
>
> Defendant's jury was selected on March 21, 2016 and his trial commenced on March 23, 2016. Trial Counsel moved for a continuance twice, once prior to trial and once prior to the jury being sworn, citing the short period of time Trial Counsel had been on the case given that the Defendant had previously chosen to proceed pro se. In support of the continuance, Trial Counsel stated "my client believes now that he doesn't have a choice whether or not he testifies or not . . . that's the reason we're objecting to the jury and also asking for a continuance." The Trial Judge noted that the last [time] Trial Counsel was appointed as Standby Counsel, Trial Counsel had assured the Court that Trial Counsel was familiar with the case so as to be able to step in. Trial Counsel agreed, "in complete candor with the Court, Your Honor, I agree with that," but referenced another case Trial Counsel was handling and also that Defendant had informed Trial Counsel that he still wanted to proceed pro se. The Trial Judge noted this case had been going on since 2013 and that the Court had gone back and forth multiple times with Defendant indicating that he wanted an attorney and then stating that he did not want an attorney. Stated differently, "it's been a series of delays created by Mr. Norris.["]

> Defendant mentions or otherwise implies throughout his Motion that the Trial Court forced Defendant to trial with an unprepared Defense Counsel. To the extent Defendant appears to be trying to challenge the Trial Judge's denial of Trial Counsel's Motions for continuance, Defendant is trying to re-litigate an issue which should or could have been raised on appeal. This all-inclusive ground is denied as well.

Resp. Ex. T at 15-16 (record citations omitted). The Fifth DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. X.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Fifteen is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.    If Petitioner appeals this denial, the Court denies a certificate of

appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of March, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7

C:    Stonie Shane Norris, #126482
      Counsel of record

---

[9] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.